Filed 2/26/24  P. v. Thurman CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>CORTNEY JACKSON THURMAN,<br><br>    Defendant and Appellant. | C096267<br><br>(Super. Ct. No. 21FE000028) |

Between December 24, 2020, and December 30, 2020, defendant Cortney Jackson Thurman committed multiple robberies (Pen. Code, § 211)[1] and an attempted robbery (§§ 664/211) at four separate locations.  A jury found defendant guilty of five counts of robbery and one count of attempted robbery.  The jury also found true the aggravating circumstances that defendant was armed or used a weapon in the commission of the

---

[1]     Undesignated statutory references are to the Penal Code.

offense (Cal. Rules of Court, rule 4.421(a)(2))**2** and the manner of the offense indicated planning, sophistication, or professionalism (rule 4.421(a)(8)).  The trial court sentenced defendant to an aggregate term of 19 years in state prison, which included the imposition of an upper term sentence on one of the robbery counts.  On appeal, defendant contends he received ineffective assistance of counsel because counsel did not argue that the low term presumption under section 1170, subdivision (b)(6) applied to his sentence.  We will remand for resentencing and otherwise affirm the judgment.

BACKGROUND

*Count One*

On December 24, 2020, defendant went into a U.S. Bank branch after unsuccessfully trying to withdraw money through the ATM from an account he had opened the day before.  Defendant went into the branch and Abraham Rahim-Boroujerdi, a U.S. Bank client relation consultant, asked defendant if he needed help.  Defendant explained he was having trouble with the ATM and gave Rahim-Boroujerdi his ATM card and driver's license.  Rahim-Boroujerdi verified the card was valid and the account had sufficient funds for the withdrawal.  He asked defendant to fill out a withdrawal slip, got the money, and brought it back to his desk.  As he tried to complete the transaction, he received a notification on his computer that defendant's account was being closed, due to an issue with the social security number provided to the bank in opening the account.  Rahim-Boroujerdi tried to explain the situation to defendant.  Defendant got quiet, stood up, slid a note to Rahim-Boroujerdi, and walked around the desk toward Rahim-Boroujerdi, cornering him.  The note was written on receipt paper from the desk and said, "Give me the money or you're going to get hurt."  Defendant held his hand in his coat pocket in a way that "had to have meant that he had a weapon" and Rahim-Boroujerdi believed he did.  Rahim-Boroujerdi told defendant to take the money from the desk.

---

**2**    Undesignated rule references are to the California Rules of Court.

Defendant took the money and then told Rahim-Boroujerdi to "Lead me to the rest of it." Rahim-Boroujerdi understood this to mean defendant wanted him to take defendant to the vault. As soon as Rahim-Boroujerdi was out of arm's reach, he ran from defendant in an effort to get his coworkers' attention. Defendant chased after Rahim-Boroujerdi and then ran out the front lobby door of the bank.

*Count Two*

On December 28, 2020, defendant went into another U.S. Bank location. While he waited in line, defendant became "antsy" and left the bank. He went back inside and Lashea Dailey, a digital accelerator for the bank, told defendant she would be with him shortly as she was still processing another customer's deposits. He asked her if she had a charger behind the counter. She answered she did not and asked him to step back. Defendant left the bank again. Dailey finished the deposits and put the cash away. Because she felt defendant might be casing the bank for a robbery, she removed any large bundles of cash from her drawer to the vault. Defendant returned to the bank, started digging in his jacket and pulled out an account slip, and said he wanted to withdraw money from his account. As Dailey entered the information into her computer, defendant jumped over the counter. Dailey was frightened and screamed. Defendant told Dailey, "I want to get my money." Defendant screamed to another person, "I want her to give me my money. She won't give me my money." Then he left the bank.

*Counts Four and Five*

On December 29, 2020, defendant went to a drug store. While cashier Rebecca Vega was helping another customer, defendant pushed through a partition to the area behind the register and pushed Vega to the side to get to the cash register drawer. She "bumped back and closed the drawer." Another employee, Mike Myers, came to the register and told defendant to get out. Defendant slowly walked to the double doors, stepped one foot out and turned back into the store, pulled a gun from the waistband of his pants, pointed it at Vega, and told her to open the cash register drawer. Myers went to

3

the back of the store toward the pharmacy and told them to call 911. As Vega was trying to open the drawer, defendant said something about "suicide to you" which Vega interpreted as meaning he was willing to shoot her. Vega was afraid and trying to quickly log on to the register to get the drawer open. She tried to open one register and failed, so defendant told her to go to the next one. She could not get the second drawer open, so defendant told her to go back to the first register. As she struggled to open the drawers, defendant held the gun on her and continued to say, "Suicide to you, open it, open the drawer. Suicide to you." Vega finally succeeded in opening a drawer and defendant took the money from the drawer, put it in a bag, and ran out of the store.

*Counts Six, Seven, and Eight*

On December 30, 2020, Abraham Gruspe, Catherine Jane Alba, and Mohamed Alaboosi were working at a U.S. Bank branch. That afternoon, bank employees received an e-mail advising them to be careful, as an account holder might come in behaving erratically, trying to withdraw money, and because the account is blocked and cannot be accessed, the person will be very upset. The e-mail included a name and picture of the person. Shortly before closing, Gruspe saw defendant walk into the branch, he was "fidgety" and "kind of" matched the description of the person in the e-mail. Gruspe called defendant over and asked if he could help. He also alerted his coworkers that the person he was helping was the one in the e-mail. Alaboosi was at the window to Gruspe's left counting cash getting ready to close and Alba was working in the open lobby at the new accounts desk.

Defendant presented his identification to Gruspe and said he wanted to make a withdrawal from his account. The name on the identification matched the name in the e-mail. Gruspe looked up the account, saw it was blocked, and told defendant he could not withdraw money. Defendant became irate, angry, and fidgety.

Alba went to the door to the secured area and Alaboosi buzzed her in. As she entered the secured area, defendant ran toward her, pushed her, and followed her in.

4

Once in the secured area, defendant began to curse and ask for all their money, and told them, "Don't do anything. I have a gun. Don't do anything." He was angry. He said, "This is because of the pandemic. This is because of the pandemic. Give me all your money." He also called it "COVID money." Alba then pushed the security alert button.

Alaboosi gave defendant the money he had been counting. Defendant told Gruspe, "Don't do anything. I'm watching you too." Gruspe also gave defendant money from his drawer. Defendant asked if that was all the money Gruspe had, then opened another drawer himself and took the money from that drawer as well. Defendant then left the secure area. The money defendant took from Gruspe's drawer included "bait money" with a GPS tracker in it. After taking the money, defendant ran out of the bank. Using the GPS tracker information, law enforcement officers were able to locate defendant and take him into custody.

The People charged defendant with seven counts of robbery (§ 211 – counts one, three, four, five, six, seven, and eight), one count of attempted robbery (§§ 664/211 – count two), and one count of being a felon in possession of a firearm (§ 29800, subd. (a)(1) – count nine). As to counts four and five, the People alleged defendant had personally used a firearm. (§ 12022.53, subd. (b).) The People further alleged defendant had suffered a prior serious felony conviction. (§ 667, subd. (a).) The People also alleged a number of specific aggravating factors, including that the defendant was armed with or used a weapon at the time of the offense (rule 4.421(a)(2)); the manner in which the crime was committed indicated planning, sophistication, or professionalism (rule 4.421(a)(8)); and defendant was on parole at the time he committed the offense (rule 4.421(b)(4)).

The jury found defendant guilty of five counts of robbery (counts one, four, six, seven, and eight) and one count of attempted robbery (count two). The jury found defendant not guilty on two counts of robbery (counts three and five) and could not reach a verdict on being a felon in possession of a firearm (count nine) or on the firearm

5

enhancement allegation attendant to count four. The jury also found true two aggravating circumstances: that defendant was armed with or used a weapon in the commission of the offense, and the manner in which the crime was committed indicated planning, sophistication, or professionalism. In bifurcated proceedings, the trial court found true the allegation that defendant suffered a prior serious and violent felony conviction for robbery.

The trial court sentenced defendant to the upper term of five years on count one, doubled to 10 years pursuant to the strike, consecutive two-year terms (one-third the midterm, doubled pursuant to the strike) on counts four, six, seven and eight, and a consecutive one-year term (one-third the midterm, doubled pursuant to the strike) on count two, for an aggregate sentence of 19 years.

DISCUSSION

I

Defendant contends trial counsel rendered ineffective assistance of counsel by failing to argue defendant was entitled to the lower term sentence under section 1170, subdivision (b)(6). He argues the record contained evidence defendant experienced psychological trauma that contributed to the commission of the offenses. We find the record on appeal insufficient to assess the claim. The remedy, in accordance with the principles discussed below, warrants remand to the trial court for resentencing.

A.    *Section 1170, subdivision (b)(6)(A)*

Effective January 1, 2022, section 1170, subdivision (b) makes the middle term the presumptive sentence for a term of imprisonment unless certain circumstances exist. (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1038.) As relevant here, section 1170, subdivision (b)(6) provides that "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: (A) The

6

person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." While at least one court has concluded "psychological trauma based on mental illness may be a circumstance qualifying for the lower term presumption in section 1170, subdivision (b)(6)," that court also emphasized that mental illness *alone* did not qualify for the lower term presumption. (*People v. Banner* (2022) 77 Cal.App.5th 226, 241 ["Psychological trauma must attend the illness, and *that* trauma must contribute to the crime under section 1170, subdivision (b)(6)"; italics in original].)

To warrant consideration of the statute, a defendant must be able to demonstrate the source of trauma and that the trauma *contributed* to the commission of the offense. Defendant's eligibility for the ameliorative statute is unclear from the trial court record, which stands silent on whether application of section 1170, subdivision (b)(6)(A) to defendant was considered and rejected, or if it was overlooked.

B. *The Silent Record*

At sentencing, the trial court referenced factors in aggravation and mitigation and the "new law." The trial court stated, "The Court has also considered Rule 4.423 and 4.421, specifically Mr. Thurman was on parole at the time of the offenses committed in this case.So, pursuant to the new law, we have the jury having found two specific circumstances in aggravation, there are ones that, even under the new law, the Court isn't able to make its own decision, and the Court is focusing on Mr. Thurman's parole status for another 211, as justification and in reasoning for both the upper termand the consecutive sentences to be served."

Senate Bill No. 567 (2021-2022 Reg. Sess.) became effective January 1, 2022, approximately four months prior to defendant's sentencing. While we presume the trial court was aware of changes to section 1170 when sentencing defendant (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390 ["Absent evidence to the contrary, we presume that the trial court knew and applied the governing law"]), the trial court's limited

7

reference to the "new law" in the context of jury findings on aggravating circumstances makes the record unclear on whether the trial court found the portion of the new law, *requiring a presumption of the low term,* applied to defendant but found that an upper term was warranted, or that the trial court ruled out application of section 1170, subdivision (b)(6)(A) to defendant altogether.

A reviewing court may presume from a clear record how a trial court would have acted if an omitted argument, or a law of which it was not aware or which was not in place, had been addressed at the time of sentencing. But to do so, the record must be clear. The recent decision in *People v. Salazar* (2023) 15 Cal.5th 416 emphasizes that when the record is not clear, the proper remedy on appeal is to remand the matter for resentencing.

Distinguishing the long-standing rule in *People v. Watson* (1956) 46 Cal.2d 818, 836, that reversal is warranted only where it is reasonably probable that a more favorable outcome will result therefrom, the *Salazar* court noted that the decision in *Watson* does not take into consideration the " 'more speculative inquiry' " of what choice the trial court is likely to make in the first instance when there has been a substantive change in the law after sentencing, and in such a situation it is almost always speculative for a reviewing court to say what the trial court would have done if it was aware of the scope of its discretionary powers. And in that situation, *Salazar* noted the appropriate remedy is to remand for resentencing unless the "record '*clearly indicate[s]*' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*Gutierrez*, *supra*, 58 Cal.4th at p. 1391, italics added for emphasis; *People v. Banner* (2022) 77 Cal.App.5th 226, 242; *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1096; *People v. Fuller* (2022) 83 Cal.App.5th 394, 400, review granted Nov. 22, 2022, S276762.)

Here, we note the distinction that the new law had been in effect for four months prior to sentencing, and the trial court referenced the "new law." But the limited

reference by the trial court does not *clearly indicate* that the court was including consideration of section 1170, subdivision (b)(6)(A). The court's comment on the "new law" addressed only one aspect of the section (aggravating circumstances) and expressed a limitation on the court's discretion. And, this limited comment does not *clearly indicate* the trial court was aware of the scope of its discretionary powers, i.e., to decide whether section 1170, subdivision (b)(6)(A) applied to defendant, and if so, whether the low term presumption was overcome. With the record not clearly indicating the trial court would have reached the same conclusion had section 1170, subdivision (b)(6)(A) been addressed at sentencing, the appropriate remedy is to remand for resentencing.

C. *Defendant's Claim of Ineffective Assistance of Counsel Is Moot*

Defendant contends trial counsel rendered ineffective assistance of counsel by failing to argue defendant was entitled to the lower term sentence under section 1170, subdivision (b)(6). He argues the record contained evidence defendant experienced psychological trauma that contributed to the commission of the offenses. With the remand of this matter to the trial court for resentencing, defendant's claim of ineffective assistance of counsel, for failure to raise section 1170, subdivision (b)(6)(A) at sentencing, is moot.

II

Although not raised by the parties, our review of the record reveals a clerical error in the abstract of judgment that must be corrected. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 [appellate court may correct clerical errors in abstract of judgment and minute orders that do not accurately reflect the oral pronouncement of judgment by a sentencing court].) Given defendant's prior strike conviction, the trial court doubled each term imposed on counts one, two, four, six, seven, and eight during sentencing. The abstract of judgment reflects the five-year term on count one, the one-year terms on counts four, six, seven, and eight, as well as the six-month term for count two, but fails to reflect that those terms each were doubled for defendant's prior strike. (§§ 667, 1170.12.) Our

9

disposition here, with a remand to the trial court for resentencing, resolves these discrepancies.  We express no opinion on the appropriate sentence after remand.

DISPOSITION

The case is remanded to the trial court for a resentencing hearing.  The judgment is otherwise affirmed.


/s/
Keithley, J.*


We concur:


/s/
Hull, Acting P. J.


/s/
Duarte, J.


---

*       Judge of the Butte County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10